FOX ROTHSCHILD LLP
Yann Geron
Daniel A. Schnapp
100 Park Avenue, Suite 1500
New York, New York 10017
(212) 878-7900

*Attorneys for Plaintiff Yann Geron, Chapter 7 Trustee of the Estate of Thelen LLP*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
In re                                              :     Chapter 7
                                                   :
THELEN LLP,                                        :     Case No. 09-15631 (ALG)
                                                   :
                    Debtor.                        :
---------------------------------------------------------x
YANN GERON, Chapter 7 Trustee of the               :
Estate of Thelen LLP,                              :
                                                   :
                    Plaintiff,                     :
                                                   :     Adv. Pro. No. 13-        (ALG)
       -against-                                   :
                                                   :
JAMES R. BRIDGES,                                  :
                                                   :
                    Defendant.                     :
---------------------------------------------------------x

**COMPLAINT FOR (I) BREACH OF CONTRACT, (II) TURNOVER OF
PROPERTY OF THE ESTATE, AND (III) AVOIDANCE AND RECOVERY OF
FRAUDULENT CONVEYANCES**

Plaintiff, Yann Geron (the "Trustee"), as Chapter 7 Trustee of the estate of Thelen LLP (the "Debtor")[1], brings this adversary proceeding against James R. Bridges (the "Defendant"), pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure, and alleges as follows:

---

[1] The term Debtor, as defined herein, includes Thelen LLP and its predecessor law firm or firms, including Thelen Reid Brown Raysman & Steiner LLP.

**INTRODUCTORY STATEMENT**

1. This is an action to (i) recover for breach of contract against the Defendant, a former partner of the Debtor; (ii) compel the Defendant to turnover estate property; and (iii) avoid and recover fraudulent conveyances made by the Debtor to or for the benefit of the Defendant.

**PARTIES, JURISDICTION AND VENUE**

2. Plaintiff Trustee is the duly appointed Chapter 7 Trustee in the proceeding captioned as *In re Thelen LLP*, Case No. 09-15631 (ALG), which is pending in the United States Bankruptcy Court for the Southern District of New York. The Trustee may be served with process at 100 Park Avenue, Suite 1500, New York, New York 10017.

3. Defendant is an individual former equity partner of the Debtor who left the Debtor subsequent to the date of dissolution.

4. Upon information and belief, Defendant resides at 3404 La Caminita St., Lafayette, California, 94549.

5. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This adversary proceeding relates to the Debtor's Chapter 7 bankruptcy case.

6. This Court has personal jurisdiction over the Defendant as he/she conducted business with the Debtor and the Defendant may be served with process under Bankruptcy Rule 7004.

7. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

8. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (E), (H) and (O). If any of the claims asserted in this adversary proceeding are determined to be non-core, Plaintiff consents to the entry of final judgment by the Bankruptcy Court.

## FACTUAL BACKGROUND

a.  **History of the Debtor**

9.  Thelen, Marrin, Johnson & Bridges ("Thelen Marrin") was formed as a law partnership in California in 1924.

10. In June 1998, Thelen Marrin merged with New York-based Reid and Priest to form Thelen Reid & Priest LLP.

11. Effective December 1, 2006, Thelen Reid & Priest LLP merged with Brown Raysman Millstein Felder & Steiner, LLP ("Brown Raysman") to form Thelen Reid Brown Raysman & Steiner LLP (the "Merger"). The transaction was the largest law firm merger within the United States in 2006, creating a bicoastal firm of over 600 attorneys.

12. The Debtor lost approximately 230 attorneys between the Merger and the summer of 2008.

13. In July 2008, the Debtor announced its intention to seek another merger to increase its headcount and slow the tide of partner defections. After merger discussions with an East Coast law firm failed, the firm began looking to shed practice groups under the threat of dissolution.

14. In August 2008 the Debtor shortened its name to Thelen LLP.

15. By September 2008, the three "name partners" from pre-merger Brown Raysman left the Debtor.

16. On October 28, 2008, Debtor's partners voted to dissolve the firm.

17. On September 18, 2009, the Debtor filed a voluntary petition under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code").

3

b.     **The Partnership Agreements and the Debtor's Insolvency**

18.    The Debtor was a limited liability partnership organized under the laws of the State of California.

19.    From December 1, 2006, through October 27, 2008, the Debtor's affairs were governed by The Third Amended and Restated Limited Liability Partnership Agreement of Thelen Reid Brown Raysman & Steiner LLP (the "Third Partnership Agreement").

20.    From October 28, 2008, through the date of its dissolution, the Debtor's affairs were governed by The Fourth Amended and Restated Limited Liability Partnership Agreement of Thelen LLP (the "Fourth Partnership Agreement").

21.    The Third Partnership Agreement and Fourth Partnership Agreement are collectively referred to herein as the "Partnership Agreements".

22.    The Defendant signed one or more of the Partnership Agreements or through his conduct manifested an intention and agreement to be bound by one or more of the Partnership Agreements.

23.    Section 8.3 of the Partnership Agreements provides for the application of the laws of the State of California (other than its conflicts of laws principles) to the construction, interpretation and effect of the agreements.

24.    At all relevant times hereunder, the Debtor operated under a three tier partnership: (i) equity partners without guaranteed compensation ("Tier One"), (ii) equity partners with guaranteed compensation ("Tier Two"), and (iii) income partners (strictly salaried).

25.    At all relevant times hereunder, the Debtor's policy was to pay its Tier One and Tier Two equity partners semi-monthly draws, which were to be applied against each partner's share of distributable profits for that year and/or guaranteed salary. Each Tier One and Tier Two

equity partner's proportionate entitlement to a net profit distribution was determined by a point system.

26. Pursuant to Section 4.1.1 of the Third Partnership Agreement and Section 4.1.1.1 of the Fourth Partnership Agreement, "the Net Income of the Partnership for each calendar year or relevant portion thereof (including each item of income, gain, loss, deduction and credit, or basis therefore) shall…be allocated to the Partners in proportion to their Sharing Ratios."

27. At all relevant times hereunder, semi-monthly draws were provided to all Tier One equity partners without guaranteed compensation, as well as Tier Two equity partners with guaranteed compensation. The monthly draw was $1,000 per point equity per month, with a minimum draw of $21,000 per month for full equity partners (16 points or higher).

28. Under the Partnership Agreements, policies promulgated thereunder, and the Debtor's course of dealing, the Debtor paid the Defendant monthly draws in advance of anticipated yearly allocated earnings of the Defendant.

29. As a result of this practice, to the extent that the year-end accounting revealed that a partner's draws exceeded what the partner was entitled to under the Partnership Agreements, such partner was liable to the Debtor in the amount of such excess compensation.

30. A review of the Debtor's assets and liabilities at fair market value, on a liquidating basis, shows that the Debtor was insolvent as of December 31, 2006.

31. The Debtor's balance sheet as of December 31, 2006, at liquidation value, indicates that the Debtor's liabilities exceeded its assets by approximately $32,500,000, and that the Partners collectively had negative capital in the Debtor[2]. The evidence available to the

---

[2] This figure is based upon a preliminary analysis conducted by the Trustee of the Debtor's financial affairs. The analysis includes certain initial assumptions which may need to be modified as a result of discovery and further expert analysis. Therefore, the Trustee reserves all rights in connection with this figure.

Trustee indicates that in each of the successive years of 2007 and 2008, the Debtor's liabilities exceeded its assets.

32.    Notwithstanding the Debtor's insolvency, the Defendant received monthly draws from the Debtor in 2007 or 2008 in excess of the Defendant's entitlement to such payments under the Debtor's Partnership Agreements.

33.    At all relevant times hereunder, the Debtor occasionally made loans and gave advances to the partners for a variety of reasons, including, but not limited to, payment of health insurance and other personal expenses. In addition, the Debtor also made quarterly estimated state, federal and foreign tax payments on behalf of certain of its partners. At the end of October 2008, the Debtor's books and records reflect an aggregate amount due the Debtor in excess of $1,000,000 from the various partners on account of these advances.

## COUNT I
### Breach of Contract (Overcompensation)

34.    The Trustee repeats, re-alleges and incorporates the allegations in all preceding paragraphs of this Complaint.

35.    The Partnership Agreements and policies and practices promulgated thereunder constitute a valid and enforceable contract between the Debtor and the Defendant (the "Contract").

36.    Section 1.9.10 of the Partnership Agreements defines Net Income as the net income of the Partnership (whether positive or negative) as determined by the cash receipts and disbursements method of accounting as used for federal income tax purposes.

37.    Section 4.1.1 of the Third Partnership Agreement and Section 4.1.1.1 of the Fourth Partnership Agreement provide that:

6

> The Net Income of the Partnership for each calendar year or relevant portion thereof (including each item of income, gain, loss, deduction and credit, or basis thereof) shall … be allocated to the Partners in proportion to their Sharing Ratios.

38. Section 4.2.1 of the Partnership Agreements provides that:

> Each Partner shall be entitled to receive a draw as an advance against such Partner's share of Net Income of the Partnership on a periodic basis….

39. Section 6.6.3 of the Partnership Agreements provides that:

> The Partnership shall be entitled to recover any amount owed to it by a Former Partner on the date such Partner ceases to be a Partner….

40. Section 7.4.4 of the Third Partnership Agreement and Section 7.4.5 of the Fourth Partnership Agreement provide that:

> In the case of a dissolution and winding up of the Partnership, the Partnership's assets shall first be applied to pay the liabilities of the Partnership owing to third parties and then to the Partners.

41. The aggregate distributions received by the Defendant was in direct violation of one or more of the above-referenced provisions of the Partnership Agreements.

42. As a result, Defendant was overpaid $8,835 in 2008.

43. Defendant breached the Contract by failing to repay those amounts to the Debtor which represent the overcompensation paid to the Defendant (collectively, the "Overcompensation Payment").

44. The Debtor has fully complied with the terms of the Contract.

45. Therefore, the Trustee seeks judgment in his favor and against the Defendant in an amount to be determined at trial that is no less than the Overcompensation Payment, together with costs, interest, attorneys' fees and any other relief deemed just and appropriate.

## COUNT II
### Turnover of Estate Property

46. The Trustee repeats, re-alleges and incorporates the allegations in all preceding paragraphs of this Complaint.

47. The amount due and owing the Debtor on account of the Overcompensation Payment constitutes property of the estate within the meaning of Section 541 of the Bankruptcy Code.

48. Pursuant to Section 542(a) of the Bankruptcy Code, the Defendant is required to turn over the full amount of the Overcompensation Payment to the Debtor's estate.

49. Therefore, the Trustee seeks judgment in his favor and against the Defendant in an amount to be determined at trial that is no less than the Overcompensation Payment, together with costs, interest, attorneys' fees and any other relief deemed just and appropriate.

## COUNT III
### (Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)(B))

50. The Trustee repeats, re-alleges and incorporates the allegations in all preceding paragraphs of this Complaint.

51. The Overcompensation Payment (or, the "Fraudulent Conveyances") constitute transfers of property of the Debtor to or for the benefit of the Defendant.

52. The Debtor received less than a reasonably equivalent value in exchange for the Fraudulent Conveyances.

53. During 2007 and 2008, respectively, the reasonably equivalent value obtained by the Debtor from the Defendant was limited to the Defendant's allocation of distributions and/or guaranteed salary as determined under the Partnership Agreements.

54. The Debtor was insolvent on the date that the Fraudulent Conveyances were made.

55. Upon information and belief, at the time the Fraudulent Conveyances were made, the Debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonable small capital.

56. Upon information and belief, at the time the Fraudulent Conveyances were made, the Debtor intended to incur, or believed it would incur, debts that would be beyond the Debtor's ability to pay as they matured.

57. Therefore, the Trustee seeks judgment in his favor and against the Defendant avoiding the Fraudulent Conveyances and directing Defendant to pay to the Debtor's estate an amount to be determined at trial that is no less than the Overcompensation Payment, together with costs, interest, attorneys' fees and any other relief deemed just and appropriate.

## COUNT IV
### (Fraudulent Conveyances – 11 U.S.C. § 544(b) and California Corporation Code § 16957)

58. The Trustee repeats, re-alleges and incorporates the allegations in all preceding paragraphs of this Complaint.

59. Upon information and belief, at the time the Fraudulent Conveyances were made, the Debtor was unable to pay its debts as they became due in the usual course of business.

60. Upon information and belief, at the time the Fraudulent Conveyances were made, the Debtor's total assets were less than the sum of its total liabilities plus the amount that would be needed, if the Debtor were to be dissolved at the time of the distribution, to satisfy the preferential rights of other partners upon dissolution that were superior to the rights of the partners receiving the distribution.

61. Therefore, the Trustee seeks judgment in his favor and against the Defendant avoiding the Fraudulent Conveyances and directing the Defendant to pay to the Debtor's estate an amount to be determined at trial that is no less than the Overcompensation Payment, together with costs, interest, attorneys' fees and any other relief deemed just and appropriate.

## COUNT V
### (Fraudulent Conveyances – 11 U.S.C. §§ 544(b) and California Civil Code §§ 3439.04 and 3439.07 )

62. The Trustee repeats, re-alleges and incorporates the allegations in all preceding paragraphs of this Complaint.

63. Upon information and belief, as reflected in the Schedules filed by the Debtor, the Debtor has a creditor that holds an allowable unsecured claim under Section 502 of the Bankruptcy Code.

64. The Debtor did not receive consideration reasonably equivalent to the value of the Fraudulent Conveyances.

65. The Debtor was insolvent when it made the Fraudulent Conveyances.

66. Upon information and belief, at the time the Fraudulent Conveyances were made, the Debtor was engaged or about to engage in the business or transaction for which the Debtor's remaining assets were unreasonably small in relation to such business or transaction.

67. Upon information and belief, at the time the Fraudulent Conveyances were made, the Debtor intended to incur, or believed or reasonably should have believed that it would incur, debts that were beyond its ability to pay as those debts became due.

68. Therefore, the Trustee requests judgment in his favor and against the Defendant avoiding the Fraudulent Conveyances and directing the Defendant to pay to the Debtor's estate

an amount to be determined at trial that is no less than the Overcompensation Payment, together with costs, interest, attorneys' fees and any other relief deemed just and appropriate.

## COUNT VI
### (Fraudulent Conveyances – 11 U.S.C. §§ 544(b) and California Civil Code §§ 3439.05 and 3439.07)

69. The Trustee repeats, re-alleges and incorporates the allegations in all preceding paragraphs of this Complaint.

70. Upon information and belief, as reflected in the Schedules filed by the Debtor, The Debtor has a creditor that holds an allowable unsecured claim under Section 502 of the Bankruptcy Code whose claim arose prior to the making of the Fraudulent Conveyances.

71. The Debtor did not receive consideration reasonably equivalent to the value of the Fraudulent Conveyances.

72. The Debtor was insolvent when it made the Fraudulent Conveyances, or became insolvent as a result of making the Fraudulent Conveyances.

73. Therefore, the Trustee requests judgment in his favor and against the Defendant avoiding the Fraudulent Conveyances and directing the Defendant to pay to the Debtor's estate an amount to be determined at trial that is no less than the Overcompensation Payment, together with costs, interest, attorneys' fees and any other relief deemed just and appropriate.

## RESERVATION OF RIGHTS

74. The Trustee's investigation into the Debtor's financial affairs is ongoing and may lead to the discovery of additional claims against the Defendant. The Trustee hereby expressly reserves the right to amend or supplement the factual bases and the relief requested by this Complaint.

*WHEREFORE*, the Trustee requests judgment against the Defendant as follows:

      a.   Determining that the Defendant breached the Contract with the Debtor and was overcompensated in an amount to be determined at trial that is no less than the Overcompensation Payment, together with costs, interest and attorneys' fees;

      b.   Determining that the Defendant must turnover estate property consisting of the Overcompensation Payment, in an amount to be determined at trial, together with costs, interest and attorneys' fees;

      e.   Avoiding the Fraudulent Conveyances and directing the Defendant to pay to the Trustee the equivalent value of such fraudulent transfers, together with allowable costs, interest and attorneys' fees; and

      g.   Granting such and further relief as this Court deems just.

Dated:  New York, New York         FOX ROTHSCHILD LLP
          March 19, 2013                Attorneys for Plaintiff/Trustee

                                          By:  */s/ Yann Geron*
                                                Yann Geron
                                                Daniel A. Schnapp
                                                100 Park Avenue, Suite 1500
                                                New York, New York 10017
                                                (212) 878-7900